In re Lee Thomas WILSON, Debtor.

**DaimlerChrysler Financial Services North America LLC, Appellant,**

v.

**William H. Griffin, Trustee and Lee Thomas Wilson, Appellees.**

BAP No. KS–06–126.
Bankruptcy No. 06–20075–13.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 24, 2007.

Nelson Mitten (Marilyn J. Washburn with him on the brief) of Riezman Berger, P.C., St. Louis, MO, for the Appellant.

J. Shannon Garrett, Lawrence, KS, for the Appellee Lee Thomas Wilson.

Before BOHANON, BROWN, and THURMAN, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

Appellant DaimlerChrysler Financial Services North America LLC ("Daimler-Chrysler") appeals the bankruptcy court's Order confirming the Chapter 13 Plan filed by the Debtor, Lee Thomas Wilson ("Debtor"). Central to this appeal is the question of whether the "hanging paragraph" at the end of 11 U.S.C. § 1325(a)(9) relieves the Debtor of the obligation to pay post-petition interest to the secured creditor who recently financed the Debtor's acquisition of a car. For the reasons stated below, we reverse the bankruptcy court's Order.

## I. Background

Ninety-three days prior to filing his Chapter 13 bankruptcy, the Debtor purchased a 2005 Dodge Neon. The Debtor financed his purchase of the car with a loan from DaimlerChrysler. To secure payment of the loan, the Debtor granted DaimlerChrysler a purchase-money security interest in the vehicle.

The parties do not dispute that Daimler-Chrysler's claim is the type of claim covered by the paragraph added to the end of 11 U.S.C. § 1325(a)(9)[1] by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The entire text of the paragraph is as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

This paragraph has been the subject of extensive litigation in the bankruptcy courts. Because the paragraph does not appear to be a part of § 1325(a)(9), which it follows, and because it was not identified as a separate numbered sub-paragraph of § 1325(a), we will refer to the language added by the BAPCPA amendment as the "hanging paragraph," as have most courts before us. Most of these courts have referred to claims secured by motor vehicles and covered by the hanging paragraph as "910–claims" and we also adopt this common parlance.

The Debtor's Chapter 13 plan proposed to pay DaimlerChrysler's 910–claim in the full amount of the loan balance over the term of the plan, without any interest. DaimlerChrysler objected to confirmation of the plan, arguing that the hanging paragraph prohibited bifurcation of its 910–

---

1. Unless otherwise noted, all future statutory references in this Opinion are to the Bankruptcy Code, Title 11, United States Code.

claim and that therefore, § 1325(a)(5)(B)(ii) required payment of interest on the full amount of DaimlerChrysler's claim. The bankruptcy court overruled DaimlerChrysler's objection and confirmed the plan, apparently on the basis of its prior reported decision in *In re Wampler*.[2] In *Wampler*, the bankruptcy court held that the language of the hanging paragraph prevented a 910–claim from being an "allowed secured claim" and, thus, the plan did not have to treat it in the manner specified in § 1325(a)(5)(B)(ii), and it did not require the payment of interest on this claim.[3]

## II. Appellate Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[4] A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[5] An order confirming a Chapter 13 plan is a final, appealable order under 28 U.S.C. § 158(a).[6] DaimlerChrysler's notice of appeal was timely filed within ten days of entry of the Order. Neither party elected to have the appeal heard by the district court for the district of Kansas. Thus, this Court has jurisdiction to review the Order.

## III. Standard of Review

■ The facts in this case are not disputed. When we review the bankruptcy court's interpretation of a statute it is a question of law, subject to *de novo* review.[7]

---

2. 345 B.R. 730 (Bankr.Kan.2006). We say the bankruptcy court's ruling was "apparently" based on its prior reasoning in *Wampler* primarily because the parties clearly understood the ruling in this manner and have so framed the issue on appeal. There is no reference to *Wampler* or to any basis for denying DaimlerChrysler's objection to the plan in the confirmation Order itself. *See* Order Confirming Chapter 13 Plan, *in* Appellant's Amended Appendix ("App.") at 36–37. The brief transcript from the confirmation hearing also sheds little light on the subject other than the fact that the bankruptcy judge had denied an objection to confirmation in a previous case heard the same day for the same reason. There is only a passing reference to a "Wampler agreement that everybody had been making" and that the agreement is "[c]onditioned upon Wampler." *See* Transcript of Proceedings at 2–3, *ll.* 18–25, 1–10, *in* App. at 33–34.

We note that the bankruptcy court did not comply with Federal Rule of Civil Procedure 52(a) (made applicable in the contested matter before him by Federal Rules of Bankruptcy Procedure 9014(c) and 7052), which obligates the trial court to sufficiently state findings of fact and conclusions of law so that a reviewing court may "understand not only the factual, but also the legal reasoning of the [trial] court to enable us to conduct a 'just, orderly review of the rights of the parties before us.' " *Chandler v. City of Dallas*, 958 F.2d 85, 89 (5th Cir.1992) (citing *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir.1991)). But, we have elected to rule on the merits of this appeal.

3. This Court does not reach the issue of whether a bankruptcy court has discretion to approve a plan that does not meet § 1325's requirements, though that issue was discussed in *In re Wampler*, because the issue was not presented to, considered, or decided by the bankruptcy court in this case. *See Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229, 1233 (10th Cir.1997).

4. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

5. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citation omitted).

6. *In re De Anda–Ramirez*, 359 B.R. 794, 796 (10th Cir. BAP 2007); *Citifinancial Auto v. Hernandez–Simpson*, 369 B.R. 36, 39–40 (D.Kan.2007).

7. *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir.2001) (citing *In re Gledhill*, 164 F.3d 1338, 1340 (10th Cir.1999)).

*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[8]

## IV. Discussion

■ The hanging paragraph provides that "[f]or purposes of paragraph (5), *section 506 shall not apply* to a claim described in that paragraph if the creditor has a [910–claim] ..." § 1325 (emphasis added). Courts universally agree that the reference to "paragraph (5)" is to § 1325(a)(5), which describes the required treatment of an "allowed secured claim provided for by the plan...."[9] Section 1325(a)(5) allows the debtor three options for treatment of "allowed secured claims" in a Chapter 13 plan.[10] We are concerned with the effect of the hanging paragraph when a debtor elects to retain the vehicle and pay the purchase-money secured creditor through his Chapter 13 plan. Specifically, we must determine the effect of this language on the debtor's obligation to pay post-petition interest.

Section 506(a)(1) provides in part that:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

For debts not covered by the hanging paragraph, this section allows a debtor to "cram-down" secured claims in a Chapter 13 plan by treating a claim as an allowed secured claim in the amount of the value of the property and an unsecured claim for the remaining balance. But does this provision merely prevent debtors from bifurcating a 910–claim into an "allowed secured portion" and an unsecured portion, or does it prohibit a 910–claim from being treated as an "allowed secured claim" in all respects, including the accrual of post-petition interest?

The vast majority of courts faced with this question have interpreted the hanging paragraph as merely preventing the cram-down of 910–claims to the value of the collateral. The majority view requires a debtor to treat a 910–claim as an "allowed secured claim" in the full amount of the loan balance on the petition date.[11] If a

---

8. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

9. *In re Lowder*, 2006 WL 1794737, *2 (Bankr. D.Kan. June 28, 2006); *In re Trejos*, 352 B.R. 249, 253 (Bankr.Nev.2006).

10. Two of § 1325(a)(5)'s options: consensual treatment and surrender of the collateral, are not implicated in this appeal. This Court has recently addressed the effect of the hanging paragraph on the debtor's option to surrender the secured party's collateral in *In re Quick*, 371 B.R. 459 (10th Cir. BAP 2007). In *Quick*, this Court held that the hanging paragraph allows a debtor to surrender the collateral securing a 910–claim in full satisfaction of the secured creditor's claim, and precludes an unsecured deficiency claim.

11. The following is a partial list of the bankruptcy cases adopting the majority view: *In re Brown*, 339 B.R. 818 (Bankr.S.D.Ga.2006); *In re Henry*, 353 B.R. 261 (Bankr.D.Or.2006); *In re Murray*, 352 B.R. 340 (Bankr.M.D.Ga. 2006); *In re Trejos*, 352 B.R. 249 (Bankr. D.Nev.2006); *In re Turner*, 349 B.R. 437 (Bankr.D.S.C.2006); *In re Osborn*, 348 B.R. 500 (Bankr.W.D.Mo.2006), *aff'd*, 363 B.R. 72 (8th Cir. BAP 2007); *In re Brown*, 346 B.R. 868 (Bankr.N.D.Fla.2006); *In re Sparks*, 346 B.R. 767 (Bankr.S.D.Ohio 2006); *In re Brown*, 346 B.R. 246 (Bankr.M.D.Ga.2006); *In re Soards*, 344 B.R. 829 (Bankr.W.D.Ky. 2006); *In re Vega*, 344 B.R. 616 (Bankr. D.Kan.2006); *In re Brooks*, 344 B.R. 417 (Bankr.E.D.N.C.2006); *In re Bufford*, 343 B.R. 827 (Bankr.N.D.Tex.2006); *In re Montoya*, 341 B.R. 41 (Bankr.D.Utah 2006); *In re DeSardi*, 340 B.R. 790 (Bankr.S.D.Tex.2006); *In re Fleming*, 339 B.R. 716 (Bankr.E.D.Mo. 2006); *In re Wright*, 338 B.R. 917 (Bankr.

debtor elects to retain the vehicle and the secured creditor does not agree to some other treatment, the majority view is that § 1325(a)(5)(B)(ii) requires the debtor to distribute property of a "value, as of the effective date of the plan" equal to the "allowed secured claim." In other words, on 910–claims, the debtor must pay the full amount of the claim, plus interest at the "prime-plus" rate prescribed by *Till v. SCS Credit Corp.*[12] Interest at the *Till* rate is required even when the loan agreement provides for no interest or interest at less than the *Till* rate.[13] We note that, to date, all appellate level cases to have addressed this issue have adopted the majority view.[14]

The bankruptcy court in this case adopted the minority view of the hanging paragraph.[15] This position is based on the reasoning that § 506(a) is the only section of the Bankruptcy Code by which a creditor may obtain an "allowed secured claim." If the hanging paragraph makes § 506(a) inapplicable to 910–claims, then 910–claims cannot be "allowed secured claims" and they need not be treated as such under § 1325(a)(5).[16] Even if this was not Congress' intent, reasons the minority, this is

the effect of a provision that makes § 506(a) inapplicable.[17]

In analyzing the language of the hanging paragraph, we recognize that both the majority view and the minority view are logical solutions to the problem created by the amendment's language that does not precisely dovetail with language in the other affected Code sections. For several reasons, however, we believe that the majority view is the most reasonable and workable interpretation of the hanging paragraph.

■ First, we agree with the majority view that § 506(a) is not a definitional section dictating the only method of obtaining an "allowed secured claim." In *Dewsnup v. Timm*[18] the Supreme Court, at least for the purposes of § 506(d), rejected the argument that "allowed secured claim" should be read as an indivisible term of art defined by reference to § 506. Instead the phrase may be parsed into two terms, an "allowed claim" (meaning no objection to the claim has been asserted or has been overruled under § 502(b)) and a "secured claim" under nonbankruptcy law (i.e., a claim secured by a "lien" as defined in § 101(37)).[19] Thus, a claim may be an

M.D.Ala.2006); *In re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn.2006); *In re Robinson*, 338 B.R. 70 (Bankr.W.D.Mo.2006).

**12.** 541 U.S. 465, 479–80, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

**13.** *In re Scruggs*, 342 B.R. 571, 574 (Bankr. E.D.Ark.2006).

**14.** *Citifinancial Auto v. Hernandez–Simpson*,· 369 B.R. 36, 43–44 (D.Kan.2007); *In re Taranto*, 365 B.R. 85, 89–91 (6th Cir. BAP 2007).

**15.** *In re Wampler*, 345 B.R. 730, 735–36 (Bankr.D.Kan.2006).

**16.** The minority view has been adopted ‘in four reported cases, two which were decided

by Judge Walker of the Middle and Southern Districts of Georgia: *In re Carver*, 338 B.R. 521, 525–27 (Bankr.S.D.Ga.2006) and *In re Green*, 348 B.R. 601 (Bankr.M.D.Ga.2006). The other two cases have been explicitly disagreed with or reversed in their entirety. See *In re Wampler*, 345 B.R. 730 *contra Citifinancial Auto v. Hernandez–Simpson*, 369 B.R. 36, 43–44 (D.Kan.2007) and *In re Taranto*, 344 B.R. 857 (Bankr.N.D.Ohio 2006), *rev'd*, 365 B.R. 85 (6th Cir. BAP 2007).

**17.** 8 *Collier on Bankruptcy* ¶ 1325.06[1][a], at 1325–27 (Alan N. Resnick ed., 15th ed. rev. 2007).

**18.** 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**19.** 502 U.S. at 415, 112 S.Ct. 773.

"allowed secured claim" without reference to the valuation process of § 506. Therefore, while the hanging paragraph prevents § 506(a) from operating to value a 910–claim as an allowed secured claim only to the extent of the value of the collateral securing the claim, it does not prevent the 910–claim from being considered an allowed secured claim for purposes of the required treatment in § 1325(a)(5).

■ The majority interpretation which we adopt here is most consistent with the Supreme Court's direction that the "basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." [20] As stated by the Court in *In re Montoya:*

> The *existence* of a claim is usually determined by non-bankruptcy substantive law, whereas *valuation* of that claim is determined by § 506. A purchase money security interest is secured through the parties' contract and applicable perfection statutes and is secured without operation of the Code. A creditor's secured status is not erased without any further adjudication merely because the hanging paragraph makes the § 506 val-

uation mechanism inapplicable to 910–day vehicle claims.[21]

Without specific language in the hanging paragraph indicating that the intent of the BAPCPA amendment was to void otherwise valid liens, we are unwilling to adopt the reasoning of the bankruptcy court in *Wampler* that "if § 506 does not apply, a creditor may be entitled to an allowed, albeit *unsecured* claim." [22] We are unwilling to presume that the hanging paragraph intended such a drastic departure from pre-BAPCPA law and such a radical change in the state law property rights of secured creditors without more explicit direction from the statutory language of the hanging paragraph, or, at the very least, its legislative history.[23]

This, we believe, illuminates the greatest difficulty posed by the minority view. If, as the minority reasons, a 910–claim may not be an "allowed secured claim" because § 506 is inapplicable to it, and if the Code does not provide that the lien securing a 910–claim is void, then what exactly is a 910–claim and how is it to be treated? It is not an "allowed secured claim," but it is not an unsecured claim either.[24] It is a type of claim for which Chapter 13 mandates no particular treatment. This requires the courts adopting the minority

---

20. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* —— U.S. ——, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007) (citing *Raleigh v. Ill. Dept. of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)) (internal quotation marks omitted).

21. *In re Montoya,* 341 B.R. 41, 44 (Bankr. D.Utah 2006) (footnote omitted) (emphasis added).

22. *In re Wampler,* 345 B.R. 730, 736 (Bankr. D.Kan.2006) (emphasis added).

23. The legislative history of the hanging paragraph is sparse, but seems to support the majority view. It notes that BAPCPA's protections for secured creditors include a prohibition against bifurcating a secured

debt incurred within the 910–day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. H.R.Rep. No. 109–31(I), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.

24. The bankruptcy court in *Wampler,* wrestling with this anomaly, referred to 910–claims variously as "allowed, albeit unsecured" claims, a claim "secured by a non-bankruptcy lien, [but which] must be treated … outside the confines of § 1325(a)(5)," and "allowed, but not secured" claims. 345 B.R. at 736, 740, and 741.

position to invent a treatment for 910–claims based on good faith, equity, or by extension of other provisions of the Code, such as § 1111(b).[25] The minority interpretation of the hanging paragraph creates too much uncertainty to be a reasonable reading of the language.

Finally, the grammatical structure of the hanging paragraph strongly suggests that it was intended only to prevent bifurcation of secured claims—not to prevent the claims it governs from being considered "allowed secured claims." By its terms, the hanging paragraph applies "for purposes of" § 1325(a)(5) and § 1325(a)(5) applies only to "allowed secured claims." Therefore, if the hanging paragraph is interpreted to mean that the claims it describes are not "allowed secured claims" then the paragraph states that it applies "for purposes of" a Code section that is inapplicable to the very claims it describes. We agree with the court in *In re Montoya* that this reading of the hanging paragraph renders its introductory clause meaningless.[26]

The imprecise language of the hanging paragraph has created a conundrum for the bankruptcy courts seeking to apply it. While neither the majority nor the minority view perfectly harmonizes the paragraph's language with the other provisions of the Code to which it relates, we believe the majority view that limits its effect to prohibiting bifurcation, and the resulting cram-down of 910–claims, is preferable. This interpretation is consistent with the Supreme Court's interpretation of § 506, its emphasis on state law as governing the substance of claims in bankruptcy, is the most practical approach in actual applica-tion, and is consistent with the grammatical structure of the paragraph itself.

## V. Conclusion

Accordingly, DaimlerChrysler's objection to the Debtor's Chapter 13 plan should have been sustained and the plan should not have been confirmed. Daimler-Chrysler's 910–claim should have been treated as a secured claim for the full amount of its loan balance on the petition date and § 1325(a)(5)(B)(ii) required the Debtor to pay interest at the *Till* rate on the allowed secured claim over the life of the plan. For these reasons, the Order of the bankruptcy court is REVERSED and this matter is REMANDED for proceedings consistent with this Opinion.

**25.** 8 *Collier on Bankruptcy* ¶ 1325.06[1][a], at 1325–27 (Alan N. Resnick ed., 15th ed. rev. 2007) (910–claims remain "secured" claims which may be modified in accordance with the debtor's good faith, other provisions of the Code, or prior law concerning what modifications are equitable); *In re Carver*, 338 B.R.

521, 527–28 (Bankr.S.D.Ga.2006) (court must craft its own rule, consistent with legislative intent, and so turns to § 1111(b) for guidance).

**26.** 341 B.R. 41, 44 (Bankr.D.Utah 2006).