ELECTRONIC CITATION:  2007 FED App. 0005P (6th Cir.)
File Name:  07b0005p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  MARK J. TARANTO AND )
KIMBERLY TARANTO, )
)
Debtors. )
)
_____ )
)
DAIMLERCHRYSLER SERVICES NORTH )
AMERICA LLC, successor by merger to )
Chrysler Financial Company, LLC, )
)
Appellant, )
)
v. ) No. 06-8034
)
MARK J. TARANTO AND )
KIMBERLY TARANTO, )
)
Appellees. )
_____ )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Akron
Case No. 05-81354

Argued:  February 6, 2007

Decided and Filed:  March 30, 2007

Before: AUG, GREGG, and SCOTT, Bankruptcy Appellate Panel Judges.
_____

**COUNSEL**

**ARGUED:**  Thomas L. Canary, Jr., MAPOTHER & MAPOTHER, Louisville, Kentucky, for Appellant.  Lisa Barbacci Afarin, Medina, Ohio, for Appellees.  **ON BRIEF:**  Thomas L. Canary, Jr., Gregory A. Stout, MAPOTHER & MAPOTHER, Louisville, Kentucky, for Appellant.  Lisa Barbacci Afarin, Medina, Ohio, Jonathan I. Krainess, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. DaimlerChrysler Services North America LLC ("Appellant") appeals the bankruptcy court's order overruling its objection to confirmation of Mark and Kimberly Taranto's ("Debtors") proposed second amended chapter 13 plan. The plan provides for payment of the full principal amount of the Appellant's secured claim approximately 45 months sooner than provided for in the contract and for payment of interest at the contract rate of zero percent. The Appellant asserts it is entitled to prime-plus interest in accordance with *Till v. SCS Credit Corp., infra*. The Appellant's claim is secured by a vehicle purchased for the Debtors' personal use within 910 days prior to the bankruptcy filing. The bankruptcy court overruled the Appellant's objection to the Debtors' plan determining that the application of *Till, infra,* would result in an unfair diminution in the distribution to the Debtors' unsecured creditors thereby giving an unjustified windfall to the Appellant. For the reasons that follow, the bankruptcy court's order is REVERSED and REMANDED.

## I. ISSUE ON APPEAL

Under the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), what rate of interest must a chapter 13 debtor pay to the holder of a claim secured by a vehicle purchased for personal use within 910 days prior to the bankruptcy filing where the debtor proposes to pay the secured claim by making periodic installment payments?

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit ("Panel") and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). The parties to this appeal have not raised any issues regarding the Panel's jurisdiction; however, we must independently assess whether we have jurisdiction. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326 (1986) (federal appellate court must satisfy itself that it has jurisdiction over appeal even if the parties concede it). 28 U.S.C. § 158(a)(1) confers jurisdiction on the Panel to hear appeals

from "*final* judgments, orders, and decrees . . . ." (emphasis added); *see id.* at §§ 158(b)(1) & (c)(1). "[A] decision is ordinarily considered final and appealable under § 1291 [and § 158(a)] only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S. Ct. 1712, 1718 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633-34 (1945)); *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839 (B.A.P. 6th Cir. 1998).

The bankruptcy court's order neither confirmed the Debtors' plan nor dismissed the chapter 13 case. The order simply overruled the Appellant's objection to the Debtors' proposed plan and scheduled a confirmation hearing. Subsequently, the bankruptcy court granted the chapter 13 trustee's motion to disburse funds prior to confirmation. The court's order further prohibited the trustee from paying allowed unsecured claims until a final order of this Panel has been issued determining this appeal. The confirmation hearing has since been repeatedly continued by the bankruptcy court. Generally, an order which neither confirms a plan nor dismisses the underlying case is not final. *Lewis v. United States,* 992 F.2d 767, 772 (8th Cir. 1993); *see also Jefferson Fin. Servs. v. Hance (In re Hance)*, 234 F.3d 1268, 2000 WL 1478390 (6th Cir. 2000) (unpub. table decision) (finding lack of jurisdiction where confirmation of plan denied and notice of appeal filed before plan was confirmed).

However, in appropriate circumstances, we may consider the notice of appeal as a motion for leave to appeal and decide the appeal. *See Wicheff*, 215 B.R. at 843; Bankruptcy Rule 8003(c); 28 U.S.C. §§ 158(a)(3) and (b). While we are not constrained by the standards set forth in 28 U.S.C. § 1292(b), which define the courts of appeals' jurisdiction to review interlocutory orders, they are instructive. *See Wicheff*, 215 B.R. at 844; *Moix-McNutt v. Coop (In re Moix-McNutt)*, 212 B.R. 953, 408 n. 6 (B.A.P. 8th Cir. 1997). Section 1292(b) provides for discretionary appellate review of interlocutory orders that involve a controlling question of law when there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. *Wicheff*, 215 B.R. at 844; *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974).

During oral argument, the parties agreed that the issue presented involves controlling law as to which there is substantial ground for disagreement, and that an immediate appeal will materially

advance this litigation. We agree. There has been a plethora of litigation, with different results, regarding what has now come to be commonly referred to as the "hanging paragraph" of 11 U.S.C. § 1325(a)(5).[1] Bankruptcy courts have disagreed regarding the meaning of the imprecise language in the hanging paragraph. *See e.g. In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006) (disagreeing with *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006) (holding that § 1325(a)(5) applies to secured claims; the status of claims as secured is made pursuant to § 506; the hanging paragraph makes § 506 inapplicable to a 910 claim, therefore § 1325(a)(5) does not apply to a creditor's 910 claim)); *see also In re Green*, 348 B.R. 601 (Bankr. M.D. Ga. 2006) (declining to adopt the evolving majority view that a 910 claim is a secured claim); *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006) (holding, contrary to majority view, that a 910 claim is not secured and, therefore, is not entitled to any interest). Plan confirmation in this case is at a standstill. Action is necessary. We will treat the Appellant's notice of appeal as a motion for interlocutory appeal. We grant the motion.

This appeal presents a discrete legal question. A bankruptcy court's conclusions of law are reviewed de novo. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 254 (6th Cir. 2006); *In re Downs*, 103 F.3d 472, 476-77 (6th Cir. 1996). "De novo review means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.    FACTS

On March 22, 2004, the Debtors and Brunswick Automart, Inc. entered into a Retail Installment Contract and Security Agreement ("Contract") for the purchase of a 2004 Chrysler Town & Country automobile (the "vehicle"). The Contract was later assigned to the Appellant. The

---

[1] *See e.g., In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006); *In re Sparks,* 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Long*, 2006 WL 2090246 (Bankr. E.D. Tenn. 2006); *In re Green*, 348 B.R. 601 (Bankr. M.D. Ga. 2006); *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006); *In re Soards*, 344 B.R. 829 (Bankr. W.D. Ky. 2006); *In re Brooks,* 344 B.R. 417 (Bankr. E.D. N.C. 2006); *In re Scruggs*, 342 B.R. 571 (Bankr. E.D. Ark. 2006); *In re Pryor*, 341 B.R. 648 (Bankr. C.D. Ill. 2006); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006); *In re Brown*, 339 B.R. 818 (Bankr. S.D. Ga. 2006); *In re Fleming*, 339 B.R. 716 (Bankr. E.D. Mo. 2006); *In re Wright*, 338 B.R. 917 (Bankr. M.D. Ala. 2006); *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *In re Montgomery*, 341 B.R. 843 (Bankr. E.D. Ky. 2006).

purchase price was $38,319.84. The Contract provided for 72 monthly payments of $532.22 at zero percent interest. The Contract also permitted prepayment without penalty.

On November 16, 2005, the Debtors filed for relief under chapter 13 of the Bankruptcy Code.[2] The Appellant filed a proof of claim in the amount of $28,222.66 secured by the vehicle. The parties agreed that the value of the vehicle was $16,706.11. No objection to the claim was lodged. The Debtors filed a chapter 13 plan which was amended twice. The amended plan now proposes to pay the Appellant the full amount of its claim. Because the vehicle had been purchased within the 910 days before the date the Debtors filed their bankruptcy petition, the parties agreed that the Appellant's claim was fully secured. *See* 11 U.S.C. § 1325. The Debtors propose to pay the claim at the rate of $1,200 per month over 23 months at the Contract interest rate of zero percent. As a result, the Appellant's claim would be paid approximately three years ahead of the scheduled duration of the Contract. As noted by the bankruptcy court, the proposed plan increases the amount of the monthly payments and accelerates the repayment schedule over what would occur if the chapter 13 case had not been filed.

The Appellant objected to confirmation of the Debtors' amended plan and demands "prime-plus" interest on its claim in accordance with *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004). The Debtors have not directly contested the applicability of *Till*. Rather, they argue that the Appellant is not entitled to interest because the plan provides for accelerated payments thereby placing the Appellant in a better position than had the payments been made in accordance with the Contract.

The bankruptcy court overruled the Appellant's objection. The court held that the application of *Till* would result in an unjustified windfall to the Appellant and in an unfair diminution in the distribution to unsecured creditors. This timely appeal followed.

---

[2] Because the Debtors filed their bankruptcy petition after October 17, 2005, the case is governed by the Bankruptcy Code, as amended by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Therefore, all future statutory references are to the BAPCPA, 11 U.S.C. §§ 101-1534 (2005), unless otherwise specifically noted.

## IV.    DISCUSSION

The requirements for confirmation of a chapter 13 plan are set forth in 11 U.S.C. § 1325. Subsection (a)(5) mandates the treatment of "allowed secured claims." Section 1325(a)(5)(B)(ii) states that the bankruptcy court shall confirm a chapter 13 plan if the plan provides that "the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ." As of the effective date of BAPCPA, section 1325(a)(5) is now qualified by an unnumbered, so-called "hanging" paragraph located at the end of subsection (a) which provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor . . . .

11 U.S.C. § 1325(a)(5).

Section 506, as referenced in the hanging paragraph, generally permits the bifurcation of an undersecured creditor's claim into secured and unsecured components. After bifurcation, a creditor's claim is secured only to the extent of the value of the collateral which secures the debt. The secured portion of the  claim is entitled to present value, *i.e.* interest,  and the unsecured portion is paid pro-rata with other allowed general unsecured claims. This result is commonly referred to  as "strip down." *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992); *In re Pryor*, 341 B.R. 648, 651 (Bankr. C.D. Ill. 2006)*; In re Wright*, 338 B.R. 917, 919 (Bankr. M.D. Ala. 2006). Under BAPCPA, claims pertaining to vehicles purchased within 910 days before filing of the bankruptcy case may no longer be stripped down - such claims must be treated as fully secured. *In re Sparks,* 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Wright*, 338 B.R. at 919-20; *In re Soards*, 344 B.R. 829, 831 (Bankr. W.D. Ky. 2006).[3]

---

[3] In a number of cases, debtors have argued that the language of the hanging paragraph in § 1325 that "section 506 shall not apply" means that so-called 910 day claims are not "allowed secured claims" under § 1325(a)(5). Therefore, if the 910 day claims are not "allowed secured claims," they are not entitled to present value under § 1325(a)(5)(B)(ii). In reported cases, it appears that this argument has been often rejected. *See, e.g. In re Sparks*, 346 B.R. 767 (Bankr. N.D. Ohio

Where a debtor seeks to retain a vehicle, and a holder of a secured claim does not consent to the terms of the plan, periodic future payments shall be paid with present value, *i.e.* interest. The statute explicitly states that "the value, as of the effective date of the plan, of property to be distributed under the plan (the periodic payments) on account of such [secured] claim [shall not be] less than the allowed amount of such claim . . . ." 11 U.S.C. § 1325(a)(5)(B)(ii).

The United States Supreme Court recently addressed the calculation of present value interest under 11 U.S.C. § 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004). In *Till*, the Court determined that the statutory language requires that the secured creditor's claim must be paid (1) in full at the time of confirmation or (2) over time *with interest*. *Id.* at 473-74. After considering and rejecting the presumptive contract rate, the cost of funds approach, and the coerced loan approach, the Court determined that the formula or "risk plus" analysis was the correct method to effectuate the purposes of the Bankruptcy Code. The Court explained:

> [U]nlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances *or its prior interactions with the debtor.*

*Till*, 541 U.S. at 479; 124 S. Ct. at 1962 (emphasis supplied).

Therefore, when a chapter 13 plan proposes to pay a secured claim in periodic payments, interest *must* be paid to achieve the present value of the claim. *Till*, 541 U.S. at 474. The Contract

---

2006); *Triad Fin. Corp. v. Brown (In re Brown)*, 346 B.R. 246 (M.D. Ga. 2006); *In re Brooks*, 344 B.R. 417 (Bankr. E.D. N.C. 2006); *In re Bufford*, 343 B.R. 827 (Bankr. N.D. Tex 2006)*; In re Shaw*, 341 B.R. 543 (Bankr. M.D. N.C. 2006); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006). *But see In re Green*, 348 B.R. 601 (Bankr. M.D. Ga. 2006) (declining to adopt conclusion that a 910 claim is a secured claim); *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006) (holding that a 910 claim is not secured and, therefore, is not entitled to any interest); *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006) (holding that a 910-day vehicle claim is neither an unsecured claim nor an allowed secured claim and that § 1325(a)(5) is not applicable to 910-day vehicle claims); 8 Collier on Bankruptcy ¶ 1325.06[1][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). This Panel need not now decide this issue. The parties have agreed that the Appellant's 910 day claim is fully secured.

providing for zero percent interest need not be considered.[4]  *In re Soards*, 344 B.R. at 831 (citing *Till*, 541 U.S. at 477); *In re Pryor*, 341 B.R. at 651 (citing *Till*, 541 U.S. at 478).

The Debtors argue that because their plan proposes to make accelerated payments at the zero percent contract rate of interest, the *Till* prime-plus interest rate would result in a windfall to the Appellant.  The bankruptcy court agreed.  However, 11 U.S.C. § 1325(a)(5)(B)(ii) remains unchanged by BAPCPA.  This Panel believes the *Till* rationale remains valid and binding.

In reported opinions, bankruptcy courts have continued to utilize the *Till* prime-plus analysis to determine present value for 910 day secured claims.[5]  The *Till* analysis governs regardless of whether the contract rate of interest is less than the market prime rate.  *In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006); *In re Soards*, 344 B.R. at 832 (citing *In re Pryor*, 341 B.R. 648 (Bankr. C.D. Ill. 2006); *In re Scruggs*, 342 B.R. 571 (Bankr. E.D. Ark. 2006).

Even though the Debtors propose to accelerate their payments and pay the Contract rate of interest, their proposed plan constitutes a "cram down" of the Appellant's allowed secured claim. *Any* plan that seeks to modify a secured creditor's rights over its objection is a cram down that implicates § 1325(a)(5)(B)(ii). "Cram down" is a term that refers to confirmation of a chapter 13 plan over the objection of the holder of a claim. *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S. Ct. 1879 (1997); *see also Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 599 n.1 (B.A.P. 6th Cir. 2006).  If the Debtor's plan proposed to pay the Appellant's secured claim without modification according to the terms of the Contract by payments from the Debtors to the

---

[4] This would be equally true in an instance where a contract required, say, a twenty-five percent interest rate.

[5] *See, e.g., In re Trejos*, 352 B.R. 249 (Bankr. D. Nev. 2006)*; In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006) (holding in post-BAPCPA 910 vehicle case where original contract provided for 0% interest that *Till* analysis applied to establish interest rate on secured claim); *In re Sparks,* 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Soards*, 344 B.R. 829 (Bankr. W.D. Ky. 2006); *In re Scruggs*, 342 B.R. 571 (Bankr. E.D. Ark. 2006) (holding in post-BAPCPA 910 vehicle case where original contract provided for 0% interest for 60 months that *Till* analysis applied to establish interest rate on claim); *In re Pryor*, 341 B.R. 648 (Bankr. C.D. Ill. 2006); *In re Shaw*, 341 B.R. 543 (Bankr. M.D. N.C. 2006); *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006); *In re Brown*, 339 B.R. 818 (Bankr. S.D. Ga. 2006); *In re Fleming*, 339 B.R. 716 (Bankr. E.D. Mo. 2006); *In re Wright*, 338 B.R. 917 (Bankr. M.D. Ala. 2006); *In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006); *In re Brooks,* 344 B.R. 417 (Bankr. E.D. N.C. 2006).

Appellant, no cram down would occur. In such an instance, the Appellant may have no choice but to accept unaltered contract payments at the interest rate of zero percent. *Pryor*, 341 B.R. at 651; *Soards*, 344 B.R. at 832. Under the Debtors' proposed amended plan, although there is no strip down, the payment stream is being modified. This modification of the payment stream is sufficient to trigger the present value requirement of § 1325(a)(5)(B)(ii). *Pryor*, 341 B.R. at 651. "A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment." *Till*, 541 U.S. at 474.

While the Supreme Court interpreted § 1325(a)(5)(B)(ii) in a case involving the strip down of a secured claim, the statute applies to all cases in which a debtor's plan modifies the rights of a holder of a secured claim, without the consent of that creditor. Because the Debtors' plan proposes to pay the Appellant's secured claim by making periodic installment payments, the *Till* analysis governs and mandates that the Appellant receive the present value of its secured claim.

Because the bankruptcy court has not yet determined the appropriate interest rate in accordance with the *Till* analysis, upon remand, it should do so in the first instance, making appropriate findings if the parties fail to agree on a prime-plus rate.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is REVERSED and REMANDED for proceedings consistent with this opinion.